Robert Lee **RIDGEWAY**,
Defendant-Appellant,

v.

**UNITED STATES of America,**
Plaintiff-Appellee.

No. 76–2145.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 14, 1977.
Decided July 13, 1977.

Ovid C. Lewis, Covington, Ky. (Court-appointed), for defendant-appellant.

Philip M. Van Dam, U.S. Atty., Peter M. Rosen, Detroit, Mich., Dana D. Biehl, Washington, D.C., for plaintiff-appellee.

Before PHILLIPS, Chief Judge and CELEBREZZE and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

The principal question raised on this appeal is whether a writ of habeas corpus ad prosequendum is a detainer under the Interstate Agreement on Detainers. We hold that it is not.

Robert Lee Ridgeway was indicted and convicted on one count of conspiracy to import, possess and distribute cocaine. On appeal he raises four grounds for reversal:

(1) That a writ of habeas corpus ad prosequendum is a detainer under the Interstate Agreement on Detainers and that the federal indictment against him should have been dismissed with prejudice when he was not tried within 120 days after his arrival within federal jurisdiction, and when he was returned to his incarceration in a State institution prior to trial on the federal charges;

(2) That an in-court identification was improperly admitted into evidence;

(3) That the evidence was insufficient to support the conviction; and

(4) That he was denied the effective assistance of counsel.

We conclude that all four of these contentions are without merit and affirm the conviction.

I.

On August 8, 1975, Ridgeway was charged under a federal indictment with one count of conspiracy. The count charged appellant and others under the conspiracy provision, 21 U.S.C. § 963, with having conspired to smuggle cocaine knowingly and intentionally into the United States in violation of 21 U.S.C. § 952(a) and under the conspiracy provision 21 U.S.C. § 846, with having conspired to distribute or possess with intent to distribute, cocaine in violation of 21 U.S.C. § 841(a)(1). A second count charged appellant with possession of cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1).

When the indictment was filed appellant was serving a sentence in a Michigan prison for an unrelated state charge. He was brought to the United States District Court for the Eastern District of Michigan pursuant to a writ of habeas corpus ad prosequendum for his arraignment and plea of not guilty on August 14, 1975. From the arraignment and throughout the proceedings, appellant and the Government agreed that appellant would be placed on personal bond rather than having a detainer filed against him with the State prison authori-

ties. This arrangement was requested by appellant so that he could maintain his trustee status and be eligible for benefits he might not have had if he had been held in a federal facility or had a detainer filed against him while awaiting trial.

He was returned to the Michigan state prison until November 20, 1975, when he was brought back to the district court for trial pursuant to another writ of habeas corpus ad prosequendum. During the trial, appellant, his attorney and the Government agreed that in return for appellant's waiver of a jury trial the Government would drop the substantive possession charge against him. Appellant's counsel then requested a continuance so that he could obtain certain scientific evidence. Appellant was returned to the Michigan State prison while the trial of his co-defendants continued. He was brought before the court for trial pursuant to yet another writ of habeas corpus ad prosequendum on March 5, 1976.

Appellant was indicted as a member of the Robert Wind cocaine smuggling conspiracy, alleged to have involved shipments of cocaine from South America in large quantities for distribution in the Detroit area for a period of almost two years from mid-1973 to mid-1975. Seventeen persons were named as co-conspirators, fifteen of whom were indicted. The district court sentenced appellant to twelve years imprisonment running consecutively with his State sentence. In addition, the court imposed a special parole term of ten years. This appeal was then filed.

## II.

First we consider the question of whether a writ of habeas corpus ad prosequendum is a detainer under the Interstate Agreement on Detainers (Agreement).

The Agreement was first promulgated by the Council of State Governments in 1957.[1] It was adopted by Congress in 1970, and 46 states, the District of Columbia and the United States are signatories. The Agreement was designed to facilitate the disposi-tion of charges in one jurisdiction when the accused is incarcerated in another jurisdiction. Some of the reasons for the agreement are set forth in Article I:

The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

The Agreement is discussed in *United States v. Ford,* 550 F.2d 732 (2d Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3056 (U.S. Aug. 16, 1977, No. 77–52).

The Agreement is applicable to situations in which one participating jurisdiction has lodged a detainer for a prisoner in another participating jurisdiction where the prisoner is incarcerated. Article III provides that a prisoner can demand to be brought to trial within 180 days on any untried indictment, information or complaint which is the basis for a detainer lodged against him. If the prisoner is not brought to trial within the 180 day limit, the appropriate court of the jurisdiction in which the outstanding charge is pending is required to dismiss the charge with prejudice and the detainer thereupon ceases to have effect. The time limit can be extended for good cause in open court, if either the prisoner or his counsel are present. Thus, Article III provides a prisoner with a procedure for bringing about a prompt disposition of detainers placed against him.

1. Council of State Governments Suggested Legislation 167 (1959).

The Agreement also provides a method under Article IV whereby prosecutors can secure prisoners serving sentences in other jurisdictions for a prompt trial. Unless a request is disapproved by the Governor of the State having custody (or in an appropriate case by the Attorney General of the United States) within 30 days, temporary custody of the prisoner is given to the requesting prosecutor. Trial must commence within 120 days of the arrival of the prisoner in the jurisdiction requesting him, unless a continuance is granted for good cause in open court with the prisoner or his counsel present. Article IV(e) mandates that:

If a trial is not had on any indictment, information, or complaint . . . prior to the prisoner's being returned to the original place of imprisonment . . . the court shall enter an order dismissing the [indictment, information or complaint] with prejudice.

In addressing the issue of whether a writ of habeas corpus ad prosequendum is a detainer under the Agreement, we note that there is a split of authority among the other Circuits. The Second Circuit in *United States v. Mauro*, 544 F.2d 588 (2d Cir. 1976) (Mansfield, J., dissenting) and the Third Circuit in *United States ex rel. Esola v. Groomes*, 520 F.2d 830 (3rd Cir. 1975), held that the writ is a detainer under the Agreement, while the Fifth Circuit has recently reached the opposite conclusion in *United States v. Scallion*, 548 F.2d 1168 (5th Cir. 1977).

Dictum in *United States v. Roberts*, 548 F.2d 665, 670 (6th Cir. 1977) indicated that this court might find a writ of habeas corpus ad prosequendum to be a detainer under the Agreement. However, in view of this court's ultimate conclusion in *Roberts* that the Agreement did not apply to a prisoner in Roberts' situation, the dictum is not binding upon this court when we are faced squarely with the issue.

We have reviewed the legislative history of the Agreement[2] and find no conclusive answer to the question before us. The Senate Report[3] defined a detainer as "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction"[4] Nowhere in the legislative history do we find any express reference to a writ of habeas corpus ad prosequendum.

Since the Congressional history does not answer our question, we look to the origins of the Agreement.[5] A detainer is simply a notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate. The detainer itself does nothing to affect the prosecution of an inmate. Filing a detainer is an informal process which does not bind the authorities to act.[6] Generally, a penal institution will recognize a detainer lodged by any person who has authority to take an inmate into custody. In most in-

2. S.Rep. No. 91–1356, 91st Cong., 2d Sess. (1970), reprinted in [1970] U.S.Code Cong. & Ad. News, p. 4864; H.R.Rep. No. 91–1018, 91st Cong., 2d Sess.; 116 Cong. Rec. 13999–14000 (remarks of Rep. Kastenmeier and Rep. Poff), 3884–85 (remarks of Sen. Hruska) (1970).

3. S.Rep. No. 91–1356, *supra*, n.2 at 4865.

4. *See also* 116 Cong.Rec. 13999 (1970) (remarks of Rep. Kastenmeier).

5. *See generally,* Meyer, Effective Utilization of Criminal Detainer Procedures, 61 Ia.L.Rev. 659 (1976); Yackle, Taking Stock of Detainer Statutes, 8 Loy.L.A.L.Rev. 88 (1975); Dauber, Reforming the Detainer System: A Case Study, 7 Crim.L.Bull. 669 (1971); Wexler & Hershey, Criminal Detainers in a Nutshell, 7 Crim.L.Bull. 753 (1971); Note, Extending the *Smith v.*

Hooey Duty to the Holding Jurisdiction, 23 Me. L.Rev. 201 (1971); Note, The Interstate Criminal Detainer and the Sixth Amendment, 23 Ark.L.Rev. 634 (1970); Note, Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, 77 Yale L.J. 767 (1968); Schindler, Interjurisdictional Conflicts and the Right to a Speedy Trial, 35 U.Cin.L.Rev. 179 (1966); Note, Detainers and the Correctional Process, 1966 Wash.U.L.Q. 417; Comment, The Detainer System and the Right to a Speedy Trial, 31 U.Chi.L.Rev. 535 (1964); Note, Convicts—The Right to Speedy Trial and the New Detainer Statutes, 18 Rut.L.Rev. 828 (1964).

6. Note, Detainers and the Correctional Process, *supra* note 5, 1966 Wash.U.L.Q. at 417.

stances, the prosecutor charged with the task of bringing the case to disposition files the detainer, but, if the case has not yet reached the stage of a formal indictment or information, the detainer may be filed by the police.[7]

Detainers have been filed with little consideration of whether the inmate will be brought to trial. In some cases they may be withdrawn as a matter of prosecutorial discretion. Some detainers apparently have been filed for punitive reasons.[8] They are withdrawn shortly before the inmate's release, having served their purpose by limiting his prison privileges and preventing parole. The dangers in this practice were discussed by Judge Sobeloff in *Pitts v. North Carolina,* 395 F.2d 182, 187 (4th Cir. 1968):

> Detainers, informal aides in interstate and intrastate criminal administration, often produce serious adverse side-effects. The very informality is one source of the difficulty. Requests to an imprisoning jurisdiction to detain a person upon his release so that another jurisdiction may prosecute or incarcerate him may be filed groundlessly, or even in bad faith, as suspected by the appellant in this case. The accusation in a detainer need not be proved; no judicial officer is involved in issuing a detainer. As often happens, the result of the then unestablished charge upon which the detainer in this case rested was that the detainee was seriously hampered in his quest for a parole or commutation.

The effects of a detainer on an inmate can be profound. Extensive delay in bringing the prisoner to trial is only one of the problems. Many prison authorities regard convicts subject to detainers as potential escape risks, and, therefore, restrict their activities and privileges.[9] An inmate may be denied institutional privileges resulting in decreased freedom of movement, and he may be precluded from preferred living quarters such as dormitories.[10] Such an inmate may be denied trusty status,[11] or he may be considered ineligible to reside on an "honor farm" or to take part in a furlough program. Detainers may be taken into account by parole boards and thus may affect the length of a sentence. A detainer can also have a psychological effect upon an inmate, thus frustrating rehabilitation. As the Senate Report noted: [12]

> [W]hen detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing. Although a majority of detainers filed by States are withdrawn near the conclusion of the Federal sentence, the damage to the rehabilitation program has been done because the institution staff has not had sufficient time to develop a sound pre-release program.

■ Against this background of the origin and purpose of the Agreement, we turn now to the writ of habeas corpus ad prosequendum and its origins. A federal writ of habeas corpus ad prosequendum is a court order directing the production of a prisoner to stand trial in federal court. A history of the writ in American jurisprudence is presented in *Carbo v. United States,* 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). The writ of habeas corpus ad prosequendum

---

7. Yackle, Taking Stock of Detainer Statutes, *supra* note 5, 8 Loy.L.A.L.Rev. at 90.

8. Note, Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, *supra* note 5, 77 Yale L.J. at 773.

9. Note, Detainers and the Correctional Process, *supra* note 5, 1966 Wash.U.L.Q. at 419.

10. Yackle, Taking Stock of Detainer Statutes, *supra* note 5, 8 Loy.L.A.L.Rev. at 91.

11. Note, Detainers and the Correctional Process, *supra* note 5, 1966 Wash.U.L.Q. at 419. Sometimes the inmate would be automatically held under maximum security or be declared ineligible for special work programs, athletic programs, release for visits to relatives' death beds, or funerals. *United States v. Ford,* 550 F.2d 732 (2d Cir. 1977).

12. S.Rep. No. 91–1356 *supra,* n.2 at 4866.

is one of the oldest writs available to the judiciary. Blackstone described the writ in his Commentaries on English law.[13] In the United States the writ traces its origins from § 14 of the First Judiciary Act, 1 Stat. 81–82 (1789), and it is now incorporated in 28 U.S.C. § 2241(c)(5). For almost 200 years the United States has utilized the writ in cases where a State prisoner was facing federal charges. Nowhere have we found any expression of Congressional intent to modify or change the writ.

Detainers, separate and distinct from the writ of habeas corpus ad prosequendum, continue to be used by federal authorities.[14] We refuse to interpret the word "detainer" to include the writ of habeas corpus ad prosequendum.

The abuses of detainers designed to be corrected by the Agreement are not present in the use of the writ. The writ is a federal court order. It can be issued only by the court, unlike a detainer which can be filed by police authorities and prosecutors. The primary emphasis of the proponents of the Agreement was on the anti-rehabilitative effect of longstanding detainers. Note, Effective Guaranty of a Speedy Trial for Convicts in Other Jurisdictions, *supra* note 5, 77 Yale L.J. at 775. The writ is not subject to this objection because it is executed expeditiously, unlike a detainer which can lay dormant for many years.

■ The interpretation of the Agreement proposed by appellant would implicitly repeal § 2241(c)(5) and runs counter to fundamental rules of statutory construction. Where Congress has enacted legislation on a particular subject, as it has for a writ of habeas corpus ad prosequendum, subsequent legislation will not be construed to modify, repeal or supplant the legislation, particularly where both statutes serve distinct purposes. *Rosencrans v. United States,* 165 U.S. 257, 17 S.Ct. 302, 41 L.Ed. 708 (1897). Rather, the courts will reconcile the earlier statute and the later legislation if possible. *McCool v. Smith,* 66 U.S. (1

Black) 459, 17 L.Ed. 218 (1861). We re-emphasize that the legislative history of the Agreement in Congress does not even mention the writ of habeas corpus ad prosequendum. It would be error to conclude that § 2241(c)(5) incorporating the writ in the current code was modified by the Agreement.

We agree with the Fifth Circuit that the legislative history shows no intent to make the Agreement the exclusive means by which a state prisoner can be brought to trial in federal court. *United States v. Scallion, supra,* 548 F.2d at 1171.

Further evidence that Congress did not intend to equate federal writs of habeas corpus with detainers is provided by a statement of the Senate Committee on the Judiciary issued to clarify this matter:

> Federal prosecution authorities and all Federal defendants have always had and continue to have recourse to a speedy trial in a Federal court pursuant to 28 U.S.C. 2241(c)(5), the Federal writ of *habeas corpus ad prosequendum.* The Committee does not intend, nor does it believe that the Congress in enacting the [Interstate Agreement on Detainers] in 1970 intended, to limit the scope and applicability of that writ. S. 1, 94th Cong., 1st Sess. (1975).

Since we conclude that a writ of habeas corpus ad prosequendum is not a detainer, it follows that the charges against Ridgeway are not required to be dismissed under the terms of the Agreement.

### III.

We have considered Ridgeway's other contentions and find them to be without merit. Specifically, we hold that the district court did not err in admitting an in-court identification into evidence; that the evidence is sufficient to support the conviction; and that Ridgeway was not denied effective assistance of counsel.

Affirmed.

---

**13.** 3 Blackstone, Commentaries * 129.

**14.** *See United States v. Ford, supra,* 550 F.2d 732 (2d Cir. 1977).