**In re JOHN GUNNING SHEET METAL, INC., Debtor.**

**Bankruptcy No. 92–15360–WCH.**

United States Bankruptcy Court, D. Massachusetts, E.D.

Oct. 1, 1992.

Hugh J. Gorman, III, Hinckley, Allen, Snyder & Comen, Boston, Mass., for Shawmut Bank.

Gary W. Cruickshank, Boston, Mass., for debtor.

Thomas O. Bean, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for Harrington Bros.

Mary T. Sullivan, Segal, Roitman & Coleman, Boston, Mass., for Sheet Metal Workers Nat. Benefit funds.

## ORDER RE MOTION FOR CLARIFICATION OF CASH COLLATERAL ORDER

WILLIAM C. HILLMAN, Bankruptcy Judge.

Some years before the filing of the original petition in this case, Debtor obtained a line of credit from Shawmut Bank, N.A. ("Shawmut") secured by a security interest in all of its assets.

On July 2, 1992, the Court approved a cash collateral stipulation ("the Stipulation") between Debtor and Shawmut which provided in part that

"the Debtor may use Shawmut's Cash Collateral [defined in the stipulation] in the ordinary course of business subject to the terms and conditions hereof as long as the Debtor complies with this Stipulation."

The Stipulation would expire by its terms on July 31, 1992.

On July 29, 1992, orders were entered authorizing the assignment of all of Debtor's contracts to Harrington Brothers, Inc. ("Harrington"), and authorizing Shawmut to collect Debtor's accounts as of August 3, 1992.

July 29th was a Wednesday; August 3rd was the following Monday. It would appear that Harrington picked up work on the contracts, and the wages of the former union employees of Debtor, on the Monday.

Movant is the Sheet Metal Workers Local 17, Insurance, Pension and Annuity Fund ("Fund"). It seeks to recover sums due to it aggregating $76,157.06. Of that amount $22,208.77 is said to be a post-petition claim, as it came due after the filing, citing *Columbia Packing Co. v. Pension Benefit Guaranty Corp.*, 81 B.R. 205 (D.Mass. 1988). It further seeks approximately $10,800.00 for work during the week ending July 31, 1992. Debtor does not agree to the sums sought, but no evidence was introduced on that point, and no finding is made as to the amount due.

Unfortunately, Debtor lacks funds to make any payment at this time. The Court has accepted Debtor's offer of proof that all cash collateral received during the period for which the Stipulation was in force was in fact expended in the ordinary course of Debtor's business.

The Fund starts with the position that the payments due to it are entitled to a super priority entitling them to immediate payment, citing *In re Arlene's Sportswear*, 140 B.R. 25 (Bankr.D.Mass.1992). It cou-

ples this with the *ad hominem* argument that

> "any accounts receivable generated for any creditor in this proceeding will be recovered only because the employees continued to work and generate profit despite the fact that their heath insurance, pensions and annuities were not paid for. It would be unconscionable to permit the secured party to reap the sole benefit for their labors in violation of the cash collateral stipulation to which it has already agreed."

The Fund seeks a ruling that the amounts due to the Fund be paid out of the collections of accounts by Shawmut, and no other funds would appear to be available for that purpose.

The facts as related above are not disputed except as noted, and the Court adopts the undisputed statements as its findings of fact.

The Fund's reliance upon *Arlene's Sportswear, supra,* is misplaced. *Arlene's* holds merely that the provisions of 11 U.S.C. § 1113 override the priority provisions of 11 U.S.C. § 507. The question of the time of payment was not relevant there and nothing in that decision deals with the issue now before the Court.

The Fund would have the Court find that § 1113 creates a priming lien, which can override the state law priority scheme as to a particular security interest. There is no basis for that position.

Section 1113(f) prohibits unilateral termination or alteration of a collective bargaining agreement by any "provision of this title." There is no provision which would so act in the circumstances of this case. That should be the short answer to the Fund's position, but the same result could be obtained otherwise. The cases under 11 U.S.C. § 1114 are instructive and lead to the same conclusion. *In re GF Corp.,* 115 B.R. 579 (Bankr.N.D.Ohio 1990); *In re Jones & Lamson Machine Co., Inc.,* 75 B.R. 208 (Bankr.D.Conn.1987). It might also be argued that the only provision in the Bankruptcy Code which permits violation of a secured party's priority is 11 U.S.C. § 364(d)(1), which is hardly relevant here.

The Sheet Metal Workers' National Benefit Funds ("National Funds") argue that this entire proceeding is improper since they did not receive notice of the action to approve the Stipulation in the first place. The decision just announced leads to the unescapable conclusion that, even if the National Funds had been represented, the Court would have found their position to have been without merit. In any event, the Fund, which has an identical legal position, had entered its appearance in the case on June 18, 1992. Any error in notice is, under the circumstances, a mere technical error.

In a sense the Fund's motion has been granted to the extent that the Court has explained its prior order. However, as a practical matter, and given the final request of the motion for a specific ruling which the Court has declined to make, the motion shall be denied. An appropriate order will enter.